UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RAYMOND A. WYMER, SR.,            )
                                  )
            Plaintiff,            )
                                  )
      v.                          )     Case No. 4:19-cv-2616-MTS
                                  )
ANDREW M. SAUL,                   )
                                  )
                                  )
            Defendant.            )

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of

Plaintiff Raymond A. Wymer for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381–85 (the "Act").  Because the Commissioner's final decision

is supported by substantial evidence on the record as a whole, the Court will affirm the

Commissioner's final decision to deny Wymer's application.

I.     **BACKGROUND**

Wymer applied for SSI on October 13, 2016.  (Tr. 173–75).  At that time, he was 46 years of

age, which is defined as a "[y]ounger person" for purposes of the Act.  *See* 20 C.F.R. § 404.1563.

His application alleged disability beginning on November 12, 2011.  (Tr. 175).  After his application

was denied at the initial claims level on December 29, 2016, (Tr. 102), Wymer filed a Request for

Hearing by Administrative Law Judge ("ALJ"), (Tr. 106), and ALJ Chandreka Allen held a hearing

on August 27, 2018 at which Wymer and a vocational expert ("VE") testified.  (Tr.  at 31).[1]

---

[1] Wymer made an earlier application for SSI that an ALJ decided on March 11, 2015.  (Tr. 79).  The Social Security
Administration Appeals Council denied Wymer's subsequent request for review of that decision.  (Tr. 84).

Wymer, who was represented by counsel, testified that he is a former construction worker who sustained injuries after being shocked and falling off a ladder in November 2011.[2]  (Tr. 40); Doc. [10-1] ¶ 8.  Wymer further testified he has been unable to work since the accident due to multiple impairments, including back and neck pain, left shoulder pain, neuropathy, carpal tunnel, anxiety, and depression.  (Tr. 40, 43–56).  When asked about his depression, Wymer stated "I'm depressed all the time . . . because I can't do the things that I normally can do as a man, you know." (Tr. 53).  Wymer characterized his depression as involving "basically all of" a lack of motivation, lack of interest, and tiredness.  (Tr. 53).  He acknowledged he takes medication for depression but suggested his depression fluctuates in severity, noting "[s]ome days I'm okay and I'm smiling and happy . . . and I live dealing with the pain that I'm in on a regular basis."  (Tr. 53–54).

In a December 18, 2018 opinion, the ALJ concluded Wymer did not meet the definition of "disabled" under the Act and was therefore not entitled to SSI.  (Tr. 25).  Wymer then filed a Request for Review of Hearing Decision with the Social Security Administration ("SSA") Appeals Council. (Tr. 7–8).  The SSA's Appeals Council denied Wymer's request for review on July 22, 2019.  (Tr. 1).  Wymer has thus exhausted all administrative remedies, and the decision of the ALJ stands as the Commissioner's final decision.  Wymer appealed the Commissioner's final decision to this Court on September 23, 2019.

As for Wymer's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of fact and responses.  The Court will address specific facts related to Wymer's appeal as needed in the discussion below.

## II.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he is disabled.  *Pearsall v.*

---

[2] Although Wymer testified that the accident occurred in November 2012, his medical records indicate that the accident actually occurred in November 2011.  (Tr. 504).

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552 (8th Cir. 1992).  The Act defines a disabled person as someone who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." § 1382c(a)(3)(B).

The Commissioner engages in a five-step process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  "If [the] claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)).  At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"—if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611.  At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"—if so, then the Commissioner will proceed to the next step; if not, then the claimant is not disabled.  20 C.F.R.  §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611.  At Step Three, the Commissioner determines whether the claimant's severe impairment or combination of impairments meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the

3

"Listings")—if so, then the claimant is disabled; if not, then the Commissioner will proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(e).

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), which is "the most [the] claimant can still do despite [his] physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 404.1520(e).  At Step Four, the Commissioner determines whether the claimant is able to perform past relevant work—if so, then the claimant is not disabled; if not then, the Commissioner will proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611.  At Step Five, the Commissioner considers whether there are alternative work opportunities in the national economy in light of the claimant's RFC, age, education, and work experience—if so, then the claimant is not disabled; if not, then the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

The claimant bears the burden of proof through Step Four of the analysis.  *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  However, if the claimant meets this burden and demonstrates he cannot perform his past work, then the burden of proof shifts to the Commissioner to establish at Step Five "that the claimant has the [RFC] to perform a significant number of other jobs in the national economy that are consistent with [his] impairments and vocational factors such as age, education, and work experience."  *Phillips*, 671 F.3d at 702.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step process outlined above.  At Step One, the ALJ found that Wymer has not engaged in substantial gainful activity since the application date on October 13, 2016. (Tr. 18).  At Step Two, the ALJ found that Wymer has the following severe physical impairments: cervical degenerative disc disease, bilateral carpal tunnel syndrome, and obesity.  *Id.*  But the ALJ

determined Wymer's mental impairments—generalized anxiety disorder, depression, and a panic disorder—are non-severe.  (Tr. 19–20).  At Step Three, the ALJ found that Wymer does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 20–21).  As for Wymer's RFC, the ALJ determined Wymer can perform sedentary work as defined in 20 C.F.R. § 416.967(a) with the following exceptions: he cannot climb ladders, ropes, or scaffolds and, while he can occasionally stoop, kneel, and crouch, he can never crawl; he cannot have any exposure to unprotected heights, hazardous machinery, or concentrated extreme temperatures; he can only occasionally do overhead reaching with the left arm but can do "frequent all other reaching bilaterally, frequent handling and fingering, and climb occasional ramps and stairs."  (Tr.  21).

Although the ALJ reasoned at Step Four that Wymer is unable to perform any past relevant work, the ALJ determined at Step Five that Wymer can still perform jobs that exist in significant numbers in the national economy.  (Tr. 24).  In reaching this determination, the ALJ considered Wymer's age, education, work experience, and RFC as well as testimony from the VE.  (Tr. 24–25).  The ALJ found Wymer could work as an addresser (Dictionary of Occupational Titles # 209.587-010, sedentary exertion level, 5,872 jobs in the national economy), document preparer (Dictionary of Occupational Titles # 249.587-018, sedentary exertion level, 46,373 jobs in the national economy), and information clerk (Dictionary of Occupational Titles # 237.367-046, sedentary exertion level, 3,404 jobs in the national economy).  (Tr. 24–25).  The ALJ therefore concluded that Wymer was not disabled, as defined by the Act, from October 13, 2016, the date the application was filed, through December 18, 2018, the date of the decision.  (Tr.  at 25).

## IV.   STANDARD FOR JUDICIAL REVIEW

This Court must affirm the Commissioner's decision if the decision applies the correct legal standards and is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g);

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 789 F.3d at 852 (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229)).

To determine whether substantial evidence supports the Commissioner's decision, the Court must review the record and "consider evidence that both supports and detracts from the decision." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).  "If substantial evidence supports the [Commissioner's] decision, [the Court] will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because [the Court] would have decided differently." *Id.*

## V.    DISCUSSION

Wymer challenges the ALJ's decision on two grounds: (1) that the ALJ improperly determined the severity of Wymer's mental impairments at Step Two; and (2) that the ALJ improperly determined Wymer's RFC by failing to account for his all his mental limitations, regardless of their severity.  (Pl.'s Br. 3, 7).  Wymer argues the Commissioner's decision is thus not supported by substantial evidence in the record as a whole and should be reversed and remanded. (Pl.'s Br. 10).  In response, the Commissioner urges the Court to affirm the ALJ's decision.  The

Commissioner argues that the ALJ properly determined that Wymer's mental impairments were non-severe and that, as a result, the ALJ did not need to factor Wymer's mental impairments into his RFC.  (Def.'s Br. 4, 11).

### A.  Determining the Severity of Wymer's Mental Impairments at Step Two

An impairment is "severe" under the Act if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 416.922.  However, an impairment is non-severe if it has no more than a minimal impact on an individual's ability to do basic work activities.  *Id.*  The claimant bears the burden of proving severity.  *See Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007).  And, while "[s]everity is not an onerous requirement for the claimant to meet, . . . it is also not a toothless standard, and [courts] have upheld on numerous occasions [an ALJ's] finding that a claimant failed to make this showing."  *Id.* at 709 (citation omitted).

When evaluating the severity of a claimant's mental impairments, an ALJ must use the "special technique" outlined in 20 C.F.R. § 404.1520a.  *See Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013).  The ALJ first "evaluate[s] [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)."  20 C.F.R. § 404.1520a(b)(1).  The ALJ "then rate[s] the degree of functional limitation resulting from the impairment(s)" in four broad functional areas known as the "Paragraph B" criteria.  *See* § 404.1520a(b)(2); *see, e.g.*, *Roades v.  Astrue*, 861 F. Supp. 2d 983, 992 (E.D. Mo. 2012).  The criteria are as follows: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).  The ALJ rates the criteria using a five-point scale of none, mild, moderate, marked, and extreme.  *See* § 404.1520(c)(4).

If the ALJ rates the claimant's mental impairments as "none" or "mild," then the ALJ will generally conclude that the mental impairments are non-severe, unless the evidence indicates there

is more than a minimal limitation in the claimant's ability to perform basic work activities. § 404.1520a(d)(1).   That said, to be "considered a severe impairment at step two, a mental impairment need not cause marked restrictions." *Vicky R. v. Saul*, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *1 (D. Minn. Jan. 28, 2020), *report and recommendation adopted by* No. 19-cv-2530 ADM/ECW, 2021 WL 533685 (D. Minn. Feb. 12, 2021) (quoting *Timi W. v. Berryhill*, No. 1:17-cv-01366-SLD-EIL, 2019 WL 1227840, at *2 (C.D. Ill. Mar. 15, 2019)).   "[C]ourts have concluded that a 'moderate' limitation is sufficient to support a finding of 'severity' at [Step Two]." *Vicky R.*, 2021 WL 536297, at *9; *see, e.g.*, *Schadenfroh v. Colvin*, No. 1:13-cv-00223-SEB-DKL, 2014 WL 1260123, at *4 (S.D. Ind. Mar. 27, 2014) ("For a mental impairment to be found 'severe' at step two of the five-step sequential evaluation process, there generally must be a rating of 'moderate' or 'extreme' in one of the first three areas or a rating of more than 'none' in the fourth area." (citing 20 C.F.R. § 404.1520a(d)(1))); *Stewart v. Astrue*, No. 09-cv-2062, 2012 WL 2994080, at *5 n.3 (N.D. Ill. July 19, 2012) (observing that "20 C.F.R. § 404.1520a(d)(1) implies that moderate impairment may qualify as a severe impairment where the evidence shows that it is 'more than minimal'").

The ALJ considered Wymer's mental impairments—anxiety, depression, and a panic disorder—both singly and in combination and reasoned they did not cause more than a minimal limitation in Wymer's ability to perform basic work activities.   (Tr. 19).   The ALJ therefore concluded Wymer's mental impairments were non-severe.   *Id.*   In support of this conclusion, the ALJ noted Wymer did not require inpatient hospitalization because of his mental impairments and only recently began receiving mental health counseling.   (Tr. 18).   The ALJ also noted that Wymer underwent a psychological evaluation with Dr. Paul Rexroat, a licensed psychologist, on October 31, 2016 and that Dr. Rexroat determined Wymer had anxiety, depression, and a panic disorder.   *Id.*   But the ALJ pointed out that Wymer's subsequent health care examination on March 17, 2017 indicated

8

"he had normal mood and effect, normal behavior, and normal judgment and thought content" and that Wymer "had logical and goal-directed thought processes, was oriented and cooperative, and had an appropriate appearance" as of March 24, 2017, when he received outpatient psychiatric treatment. (Tr. 18–19).

The ALJ next considered Wymer's mental impairments under the "Paragraph B" criteria. *See* 20 C.F.R. § 404.1520a(c)(3). First, the ALJ referred to the psychological evaluation that Dr. Rexroat completed on October 31, 2016. (Tr. 19, 93–94; Suppl. Tr. 1700). Dr. Rexroat stated that Wymer had dropped out of high school but planned to obtain a GED and that Wymer had previously owned his own business. (Tr. 93–94; Suppl. Tr. 1700). He also noted that Wymer had adequate social skills and several friends and that people visited him daily. (Tr. 93–94; Suppl. Tr. 1702). He made the following observations: Wymer had a good memory, but low-average memory function; Wymer could manage his own funds; and Wymer could sustain concentration, persistence, and pace with simple tasks. (Tr. 19, 93–94; Suppl. Tr. 1702).

Second, the ALJ referred to a Third-Party Adult Functional Report that Wymer's spouse, Shelley Wymer, completed on November 17, 2016. (Tr. 19, 218–25). She indicated that she experiences seizures and that Wymer takes care of her when she does. (Tr. 219). She noted that Wymer takes care of the cat and manages personal care without mental issues and that Wymer sometimes prepares meals and can pay bills, count change, use a checkbook, handle a savings account, use public transportation, and ride in a car. (Tr. 219–24). She also noted that Wymer spends time with others, gets along with authority figures, and has never been fired or laid off because of difficulties getting along with others. *Id.*

Third, the ALJ referred to a psychological evaluation from Wymer's treating psychiatrist, Dr. Surenda Chaganti, dated March 28, 2017. (Tr. 20, 788–90). Dr. Chaganti saw Wymer once per month from January 2017 until October 2018. (Tr. at 1677–1699). In a March 28, 2017 evaluation,

Dr. Chaganti found that Wymer had moderate limitations in the first functional area (understanding, remembering, or applying information), moderate-marked limitations in the third functional area (concentrating, persisting, or maintaining pace), and moderate limitations in the fourth functional area (adapting or managing oneself).  (Tr. 20, 788–90).  The ALJ afforded Dr. Chaganti's opinion only partial weight because the ALJ found that "the records in this case do not support" the restrictions found by Dr. Chaganti.  (Tr. 20).

Fourth, the ALJ referred to a non-examining consultative opinion from Dr. Marsha Toll, a state agency psychological consultant, dated December 22, 2016.  (Tr.  20, 93–94).  Dr.  Toll found Wymer had moderate limitations in the third functional area (concentrating, persisting, or maintaining pace).  (Tr. 20, 93–94).  She found that Wymer would be able to engage in simple to moderately complex work tasks in the national economy.  (Tr. 94).  The ALJ gave Dr. Toll's opinion only partial weight, in part because subsequent records did not support Dr. Toll's conclusions.  (Tr. 20).

Based on this evidence, the ALJ determined Wymer had no limitation in the second functional area (interacting with others) and only minor limitations in the three remaining functional areas (understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself).  (Tr. 19–20).  Because Wymer only had minor limitations in three functional areas, the ALJ concluded Wymer's mental impairments were non-severe.  (Tr. 18–20).

On appeal, Wymer argues the ALJ improperly determined the severity of his mental impairments at Step Two.  To that end, Wymer insists that the ALJ did not sufficiently explain her decision to discount the opinions of Drs. Chaganti and Toll and that, as a result, the ALJ improperly substituted her "own unsubstantiated opinion" for that of two medical professionals.  (Pl.'s Br. 4–5).  Wymer asserts that, had the ALJ afforded these opinions the deference they deserve, the ALJ would

have determined that he had at least moderate limitations in mental functioning and that his mental impairments were severe. (Pl.'s Br. 3). The Commissioner maintains the ALJ properly weighed the evidence and appropriately deemed Wymer's mental impairments non-severe. (Def.'s Br. 9–11).

The Court will first consider Dr. Chaganti's opinion. The applicable regulations afford a treating physician's opinion special deference: an ALJ must give a "treating physician's opinion regarding an applicant's impairment . . . 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012–13 (8th Cir. 2000) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)).[3] But "[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman*, 596 F.3d at 964 (alteration in original) (quoting *Goff*, 421 F.3d at 790). If an ALJ decides not to give a treating physician's opinion controlling weight, then the ALJ uses several factors to evaluate the opinion, including the consistency of the opinion with the record as a whole, the length of the treatment relationship and frequency of examinations, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)–(6). Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. *Wildman*, 596 F.3d at 966. And "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (alteration in original) (quoting *Black v. Apfel*, 143 F.3d 383, 386

---

[3] This is the so-called "Treating Physician Rule." *See* Charles Terranova, Comment, *Somebody Call My Doctor: Repeal of the Treating Physician Rule in Social Security Disability Adjudication*, 68 Buff. L. Rev. 931 (2020). The rule applies to cases filed before March 27, 2017, but not to cases filed after that date. *See* 20 C.F.R. § 404.1520c(a); § 404.1527. Because Wymer filed his application in 2016, the Court will use the regulations as provided in § 404.1527.

(8th Cir. 1998)).   An ALJ must ultimately "resolve conflicts among the various treating and examining physicians" and provide "good reasons" for the weight assigned to each.  *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart*, 421 F.3d 745, 749–50 (8th Cir. 2005)); 20 C.F.R. § 404.1527(c)(2)).   Because it is an ALJ's duty to weigh the evidence and resolve any conflicts that may arise, an ALJ's finding should not be disturbed so long as it falls within the "available zone of choice."  *See, e.g.*, *Hacker v. Barnhart*, 459 F.3d 934, 936–38 (8th Cir. 2006).

In evaluating Dr. Chaganti's opinion, the ALJ stated:

> Additionally, Surendra Chaganti, M.D., offered a March 28, 2017 opinion as to the claimant's impairments and limitations.  [He] stated that in the first area of the B criteria analysis above the claimant had a moderate restriction, had a moderate-marked concentration, persistence, and pace restriction as well as social functioning restriction, and had a moderate limitation in the last area, adapting and managing himself.  The undersigned notes that the records in this case do not support these restrictions, and as a result, the undersigned gives this opinion only partial weight.

(Tr. 20) (citation omitted).

As an initial matter, the Court concedes that the ALJ's explanation for discounting Dr. Chaganti's opinion was succinct.  However, an ALJ's explanation for discounting a physician's opinion may be succinct yet still supported by substantial evidence.  *Compare Pashia v. Berryhill*, No. 4:16-cv-1267-ACL, 2017 WL 4310433, at *1, 8 (E.D. Mo. Sept. 28, 2017) (finding an ALJ's decision was not supported by substantial evidence when the ALJ offered a cursory explanation for discounting the opinion of a treating psychiatrist who was the only physician to evaluate the severity of the claimant's mental impairments and whose opinion was supported by detailed narrative explanations, treatment notes, and other medical history), *with Derryberry v. Berryhill*, No. 1:16-cv-3-JAR, 2017 WL 1194458, at *1, 7 (E.D. Mo. Mar. 30, 2017) (concluding that "while the ALJ's consideration of [the psychiatrist's opinion] was succinct, accounting for only one sentence of the ALJ's opinion, the ALJ gave adequate attention to the report, and instead gave greater weight to [the

12

claimant's] history of near normal objective mental status examinations as observed by her healthcare providers over time."). Turning now to the record, the Court finds after careful consideration that the ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Chaganti's opinion and that the ALJ's assessment of the opinion falls within the available zone of choice.

First, while Wymer claims he has a long history of mental illness, he never required inpatient hospitalization for his mental impairments and only recently began receiving mental health counseling. (Tr. 18, 1699). Although a claimant can still have a severe mental impairment without being hospitalized, Wymer's lack of hospitalization weighs against finding severe mental impairments. *See Derryberry*, 2017 WL 1194458, at *6 (noting a lack of hospitalization for psychiatric treatment supports finding non-severe mental impairments).

Second, Dr. Chaganti's opinion takes the form of a series of checkboxes; it contains few, if any, observations or explanations supporting her conclusions. (Tr. 789–90). It is well-established that "a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence[] and provides little to no elaboration.'" *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (quoting *Wildman*, 596 F.3d at 964). And "[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements." *Wildman*, 596 F.3d at 964 (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)).

Third, Dr. Chaganti's opinion is inconsistent with his own treatment notes, which document over time Wymer's normal mood, affect, behavior, judgment, thought content, cognition, memory, and cooperation. (Tr. 1678–97). "[A]n ALJ may discount a treating source opinion that is unsupported by treatment notes." *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016); *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical

opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Fourth, Dr. Chaganti's treatment notes suggest he treated Wymer for situational stressors such as nervousness about surgery and sadness from divorce.  (Tr. 1685, 1689, 1692); *cf. Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("The medical record supports the conclusion that any depression experienced by [the claimant] was situational in nature, related to marital issues, and improved with a regimen of medication and counseling."); *Banks v. Massanari*, 258 F.3d 820, 826 (8th Cir. 2001) (finding depression not severe under similar circumstances).  And Dr. Chaganti's treatment notes further indicate that Wymer's conditions improved once treatment began, as Wymer was stable with no mood swings or depressive symptoms.  (Tr. 1681, 1684–86, 1688, 1690–92); *cf. Wildman*, 596 F.3d at 965 ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004))).

Fifth, the mere fact that Wymer was diagnosed with depression, anxiety, and a panic disorder does not, without more, make his mental impairments severe.  *See Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) (reasoning that "although [the claimant] was diagnosed with depression and anxiety, substantial evidence on the record support[ed] the ALJ's finding that his depression and anxiety was not severe.").

Sixth, Dr. Chaganti's opinion is inconsistent with other evidence in the record.  Treatment notes consistently document Wymer's normal mood, affect, behavior, judgment, thought content, cognition, memory, and cooperation.  (Tr. 18, 271, 276, 784, 896, 898, 900, 997, 1010, 1028, 114, 112, 1264, 1276, 1509, 1521, 1587, 1598, 1653, 1666–68).  Waymer's records also document his repeated lack of anxiety, depression, or memory loss symptoms.  (Tr. 1122, 1264, 1276, 1509, 1521, 1653, 1666–68).  And the record shows that Wymer had minimal issues interacting with others,

14

handling his daily activities, and caring for his epileptic spouse.  (Tr. 19, 93–94, 208–12, 219–20, 222–24).

The Court thus finds that the ALJ gave good reasons, supported by substantial evidence, for discounting the opinion of Dr.  Chaganti as to Wymer's limitations in the first, third, and fourth functional areas (understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself).  Although the ALJ did not explicitly discuss all the factors listed in § 404.1527(c) when evaluating Dr. Chaganti's opinion, the ALJ was not required to do so.  *See Nishke v. Astrue*, 878 F. Supp. 2d 958, 984 (E.D. Mo.  2012) (concluding that an ALJ's failure to perform a factor-by-factor analysis was not erroneous where the ALJ "explained his rationale in a manner that allow[ed] the [court] to follow his line of reasoning, including stating the amount of weight given to th[e] evidence"); *Derda v. Astrue*, No.  4:09-cv-01847-AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) (citing broad authority for the proposition that "[w]hile an ALJ must consider all of the factors set forth in [§ 404.1527], he need not explicitly address each of the factors").  The ALJ was concise but ultimately "explained his rationale in a manner that allows the [Court] to follow his line of reasoning." *Nishke*, 878 F. Supp. 2d at 984.

Next, the Court will consider Dr. Toll's opinion.  The applicable regulations afford less deference to a non-examining consultative opinion from a state-agency physician.  *Wildman*, 596 F.3d at 967 (quoting *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008)); *see also* § 404.1527(c)(1).  When reviewing such opinions, an "ALJ evaluate[s] the degree to which these opinions consider all of the pertinent evidence in [the] claim, including options of treating and other examining sources." *Id.* (alterations in original).  An ALJ may disregard such opinions when the state-agency physician does not have access to all the medical evidence in the record.  *See id.* at 967–68.

In evaluating Dr.  Toll's opinion, the ALJ stated:

When making this decision, the undersigned considered the opinion offered to the state Disability Determination Service by Marsha Toll . . . .  That opinion was that the claimant had concentration, persistence, and pace that was moderate and as a result, the claimant had a severe combination of mental impairments.  However, the undersigned notes that the Social Security Administration now uses a different scale for its B criteria areas.  Furthermore, the undersigned notes that the claimant has additional medical records that are now in the file and that do not support the concentration, persistence, and pace limitations expressed by Dr. Toll.  As a result, the undersigned gives this opinion by this physician only partial weight.

(Tr. 20).

As with Dr. Chaganti's evaluation, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for discounting Dr. Toll's opinion and that the ALJ's assessment of the opinion falls within the zone of choice.  Dr. Toll offered her non-examining consultative opinion in December 2016.  Subsequent evidence indicates that Wymer was attentive, oriented, goal-directed, and denied any symptoms of memory loss.  (Tr. 1264, 1276, 1509, 1521, 1587, 1598).  Because Dr. Toll did not have access to this evidence when she offered her opinion, the ALJ was justified in discounting Dr. Toll's opinion as to Wymer's limitations in the third functional area (concentrating, persisting, or maintaining pace).

The Court acknowledges that the record contains conflicting evidence and that the ALJ could have reached a different conclusion as to the opinions of Drs. Chaganti and Toll.  But "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall*, 274 F.3d at 1219.  The Court concludes that the ALJ's weighing of the evidence here fell within the available zone of choice.  It also concludes that substantial evidence supports the finding that Wymer did not have anything more than a mild limitation in any of the functional areas of the B criteria and that his mental impairments were thus non-severe.  As a result, the Court cannot disturb the ALJ's decision, even if it might have reached a different conclusion.  *See Buckner*, 646 F.3d at 556.

**B.  Accounting for Wymer's Mental Impairments in the RFC at Step Four**

Wymer argues the ALJ also improperly determined Wymer's RFC prior to Step Four by failing to account for his all his mental limitations, regardless of their severity.  To that end, Wymer insists the ALJ erred by failing to include both his severe and non-severe impairments in his RFC. (Pl.'s Br. 7–10).  This argument is easily dismissed.  The ALJ properly found Wymer's mental impairments were non-severe and thus resulted in no more than mild limitations in the four functional areas.  Mild limitations identified at Step Two using the "special technique" do not require corresponding RFC limitations.  *See Taylor v. Berryhill*, No. 4:17-cv-01050-DGK-SSA, 2018 WL 5410977, at *2–3 (W.D. Mo. Oct. 29, 2018) (rejecting the argument that the "ALJ erred by failing to incorporate the mild limitations in the [PRT] analysis from Steps Two and Three into mental limitations on his RFC at Step Four" and explaining the differences between the use of the "psychiatric review technique" (PRT) at Steps Two and Three and the function of the RFC assessment at Step Four); *see also Johnson v. Berryhill*, No. 4:17-cv-0416–DGK–SSA, 2018 WL 2336297, at *2 (W.D. Mo. May 23, 2018); *Browning v. Colvin*, No. 13-00266-cv-REL, 2014 WL 4829534, at *37 (W.D. Mo. Sept. 29, 2014) ("While it is true that the ALJ did not include his finding of plaintiff's mild difficulties in concentration, persistence, and pace in the assessment, there was no requirement that he do so.  Mild limitations in any of the four domains of mental functioning are non-severe and therefore by definition cause no work-related limitations of function." (citations omitted)).  Moreover, Wymer has not identified any evidence to support a claim that his RFC required additional limitations due to poor motivation or fatigue.  Because it is a claimant's burden to prove his RFC, the ALJ did not err by not including additional limitations.  *See Goff*, 421 F.3d at 790 ("A disability claimant has the burden to establish her RFC." (quoting *Eichelberger*, 390 F.3d at 590)).

17

Wymer further contends the ALJ erred by not including all of Dr. Chaganti's suggested mental limitations in the hypothetical the ALJ posed to the VE.  But this argument is also easily dismissed because an "ALJ's hypothetical question need include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (quoting *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996)).  Because the ALJ had already determined Dr. Chaganti's suggested mental limitations were inconsistent with the record, the ALJ did not err in not including them in the hypothetical.

CONCLUSION

After reviewing the entire record, the Court finds that the ALJ properly considered and weighed the medical opinion evidence in the record.  The Court also finds that the ALJ considered the medical evidence as a whole and made a proper severity determination at Step Two and a proper RFC determination at Step Four based on a fully and fairly developed record.  The Court therefore concludes that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.


Dated this 11th day of May, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE